## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## JACKSON DIVISION

LARRY GENE BUSHART JR.,

   *Plaintiff,*

  v.

PERRY COUNTY, TENNESSEE; NICK
WEEMS, in his individual capacity; and
JASON MORROW, in his individual
capacity;

   *Defendants.*

Civil Action No.: _____

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

JURY TRIAL DEMANDED

David Rubin*
(CA Bar No. 329852; D.C. Bar No. 90021100)
FOUNDATION FOR INDIVIDUAL RIGHTS
 AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
david.rubin@fire.org

Katherine Phillips
(TN BPR No. 036757)
PHILLIPS & PHILLIPS, PLLC
46 S. Main Street, Suite 2
Lexington, TN 38351
Tel: (731) 249-5246
katie@phillipsandphillips.law

Adam Steinbaugh*
(CA Bar No. 304829; PA Bar No. 326475)
Cary Davis*
(PA Bar No. 338042)
FOUNDATION FOR INDIVIDUAL RIGHTS
 AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
adam@fire.org
cary.davis@fire.org

*Motions for Leave to Appear *Pro Hac Vice*
forthcoming

## <u>INTRODUCTION</u>

1.    In America, we do not jail people for political speech. Yet Larry Bushart spent 37 days behind bars simply for speaking his mind. It took a national uproar about his detention for Perry County officials to drop the charge against Mr. Bushart—a charge officials knew from the outset was unfounded.

2.    On September 10, 2025, a gunman assassinated conservative commentator Charlie Kirk as he debated members of his audience at a Utah university. The attack dominated the national conversation. As many mourned Kirk, a passionate advocate for Second Amendment rights, others exercised their First Amendment rights by arguing his killing evidenced a need for stricter gun control measures. Some argued gun-rights advocates had downplayed gun violence in the past.

3.    Ten days after Kirk's death, Larry Bushart—a 61-year-old retired law enforcement officer and a resident of Lexington, Tennessee—noticed a Facebook post promoting a candlelight vigil in nearby Perry County. Underneath it, he posted a series of political memes, the internet's version of political cartoons. One image (the "Meme") accurately quoted a statement President Donald Trump made after a January 2024 shooting at Perry High School in Perry, Iowa:



4.      Defendant Perry County Sheriff Nick Weems understood Mr. Bushart's political message. He later acknowledged in a media interview that he and his deputies "knew" the Meme was not about Perry County High School in *Tennessee*, but about a 2024 shooting at a Perry High School in *Iowa*—a different school with a different name in a different state, some 695 miles away.

5.      But Sheriff Weems—who helped to promote the Kirk candlelight vigil on social media—publicly claimed it *might* have caused "mass hysteria" if interpreted as a prediction of what President Trump might say after a hypothetical shooting at Perry County High School.

6.      So, at 11:14 PM the next evening, Lexington Police—at the direction of Sheriff Weems—arrested Mr. Bushart and hauled him to jail. Mr. Bushart would remain incarcerated for 37 days, unable to pay the $2 million bond that a court imposed on him based on the false claims by Weems and his investigator, Defendant Jason Morrow, that Mr. Bushart had threatened mass violence at a school. Specifically, the arrest warrant (obtained at Sheriff Weems's direction and based on Investigator Morrow's affidavit) omitted the fact the Meme referenced a real shooting from a different year in a different state.

7.      In the 37 days Mr. Bushart was jailed, Defendant Weems mischaracterized the Meme to local media, declaring that Mr. Bushart posted it "to indicate or make the audience think it was referencing our Perry High School."[1] Sheriff Weems claimed, "teachers, parents and students [had] conclude[d] he was talking about a hypothetical shooting at our school. Numerous [people] reached out in concern." He also stated "investigators"—on information and belief, Defendants Weems and Morrow—"believe[d] Bushart was fully aware of the fear his post would cause and intentionally sought to create hysteria within the community."

---

[1] Sheriff Weems misspoke here, as the name of the high school in Perry County, Tennessee, is Perry County High School.

8.      When Mr. Bushart posted the Meme, he had no inkling or reason to think that anyone would take it as a threat of violence. And unsurprisingly, Defendants—ignoring multiple requests under the Tennessee Public Records Act—have produced no evidence that any person interpreted the Meme as a threat. In fact, the Perry County School District has no records at all concerning Mr. Bushart or the Meme.

9.      It is clearly established that the First Amendment prohibits government officials from arresting people for protected political speech. Defendants Weems and Morrow understood Mr. Bushart's post as political commentary on the debate about guns in America, but orchestrated his arrest anyway, flouting the long-entrenched First Amendment protection for even the most provocative, hyperbolic political speech. Mr. Bushart brings this action to vindicate his constitutional rights and to deter Sheriff Weems, Investigator Morrow, and similarly situated officials from future misconduct.

## JURISDICTION AND VENUE

10.      This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988. Mr. Bushart seeks compensatory and punitive damages, reasonable attorneys' fees and costs, and all other legal and equitable relief as the Court may deem just and proper.

11.      This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this District.

13.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES

**Plaintiff**

14.     Plaintiff Larry Bushart is a resident of Henderson County, Tennessee, who was arrested and jailed for 37 days because of his online political speech.

15.     Mr. Bushart retired after a 34-year career as a law enforcement and corrections officer. He worked for the Jackson Police Department from 1987 to 2006, for the Haywood County Sheriff's Department from 2007 to 2012, and for the Tennessee Department of Correction from 2015 to 2024. Mr. Bushart served in the National Guard from 1981 until 2005.

16.     Until his arrest, Mr. Bushart worked a post-retirement job in medical transportation. He lost that job because his 37-day incarceration made it impossible for him to perform his duties.

**Defendants**

17.     Defendant Nick Weems is the Sheriff and chief law enforcement officer of Perry County, Tennessee. Defendant Weems is sued in his individual capacity. At all times relevant to this action, Sheriff Weems acted under color of state law.

18.     Under state law, Sheriff Weems is the County's final policymaker regarding the application of criminal laws to the public, the investigation of alleged crimes, and the apprehension and arrest of alleged criminals. *See* Tenn. Code Ann. § 38-3-102 (2024); *Spurlock v. Sumner County*, 42 S.W.3d 75, 82 (Tenn. 2001).

19.     Sheriff Weems is also the County's final policymaker over the operation of its jail. *See Wright v. Fentress County*, 313 F. Supp. 3d at 886, 891 (M.D. Tenn. 2018) (citing Tenn. Code Ann. § 8-8-201(a)(3)).

20.     Defendant Jason Morrow is an Investigator with the Perry County Sheriff's Office. He is sued in his individual capacity. At all times relevant to this action, Investigator Morrow acted

under color of state law. At Sheriff Weems's direction, Defendant Morrow personally obtained the warrant for Mr. Bushart's arrest.

21.    Defendant Perry County, Tennessee, is a political subdivision of the State of Tennessee.

22.    Perry County is subject to liability under 42 U.S.C. § 1983 for the unconstitutional acts or omissions of its final policymakers. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); *Wright*, 313 F. Supp. 3d at 890–91.

## **FACTUAL ALLEGATIONS**

*Mr. Bushart participates in the national debate online by posting political speech after Charlie Kirk's assassination.*

23.    On September 10, 2025, Charlie Kirk was shot and killed while debating members of his audience at Utah Valley University.

24.    Kirk's death drove the national political discourse for weeks. President Trump declared a National Day of Remembrance, spoke at Kirk's memorial service, and ordered all American flags to be flown at half-staff for three days. Mourners nationwide organized memorial services and vigils.

25.    Discussion of Kirk's shooting dominated social media.

26.    Some commentators called for stricter gun control, demanding political and regulatory action in addition to prayers and memorials.

27.    Some commentators cited Kirk's status as a Second Amendment advocate and his argument that some gun deaths are an unfortunate but necessary cost for preserving the right to bear arms.

28.    Some suggested Kirk's death received an inordinate amount of political attention and asked why other victims of gun violence weren't mourned with the same national intensity.

29.     Some Kirk supporters and political figures, in turn, agitated for others to be punished and fired from their jobs for their comments about Kirk.

30.     Hundreds of people who criticized Kirk or celebrated his death were investigated or fired.

31.     In Tennessee's Perry County, residents planned a candlelight vigil for Kirk for the evening of Saturday, September 20, on the courthouse lawn.

32.     Residents promoted the vigil on Facebook, including Sheriff Weems, who made this post on September 17:



33.     On Saturday the 20th, thirty-five miles away, Mr. Bushart was participating in the still-heated political conversation about Kirk's death.

34.     "What's Happening, Perry County?" is a Facebook group publicizing events and hosting conversations relevant to Perry County residents.

35. Perusing the "What's Happening, Perry County?" Facebook group, Mr. Bushart saw a post publicizing that evening's vigil.

36. In the comments to that post, Mr. Bushart posted several memes expressing his displeasure with what he considered to be the inordinate attention that was being paid to Kirk's assassination:



37. The Meme—number five in a string of eight (at the bottom of the middle image above)—accurately quoted a statement President Trump made after a January 2024 shooting at Perry High School in Perry, Iowa.

38. Mr. Bushart did not create the Meme or add the text, "This seems relevant today…."

39. Mr. Bushart's post did not state a threat on its face.

40.     Mr. Bushart did not conceive—or have any reason to think—that any person might interpret his post as a threat. Nor did he intend to threaten anyone or anyplace.

41.     On Facebook, the responses to Mr. Bushart's comments reflected exasperation ("Jeez Larry, take a stress pill or something…"), judgment ("Someone's limerence is showing"), and agreement ("Is there one planned for the kids gunned down?").

42.     One commenter summarized Mr. Bushart's viewpoint as, "I HATE Charlie."

43.     No comment suggested any reader interpreted the Meme as a threat.

***At Sheriff Weems's behest, the Lexington Police Department visits Mr. Bushart at his home.***

44.     Despite the lack of any indication any viewer understood Mr. Bushart's post as a threat of violence, Sheriff Weems called it to the attention of Investigator Morrow.

45.     On Sheriff Weems's orders, Investigator Morrow contacted the Lexington Police Department and requested that they investigate Mr. Bushart for posting the Meme.

46.     The next evening—September 21—at 7:48 PM, an officer from the Lexington Police Department visited Mr. Bushart and his wife.

47.     The officer stated that a "Perry County investigator" wanted the officer to "speak with" Mr. Bushart.

48.     On information and belief, the "Perry County investigator" referenced by the Lexington police officer was Investigator Morrow, acting in concert with Sheriff Weems.

49.     The Lexington officer said he would be "completely honest with" Mr. Bushart and his wife.

50.     The Lexington officer stated he had "really no idea what they [Perry County] are talking about," except that a Perry County officer told him that there were "some concerning posts that were made."

51.     The Lexington officer explained that Perry County law enforcement told him that "something was insinuating violence."

52.     After identifying himself as a former law enforcement officer, Mr. Bushart responded, "No it wasn't. I'm not going to take it down. Go look."

53.     The Lexington officer declined the offer, stating "I don't care. This ain't got nothing to do with me."

54.     The officer said that he had only been asked to make contact with Mr. Bushart because Mr. Bushart was outside of Perry County's jurisdiction.

55.     The officer left Mr. Bushart's home with no evidence that Mr. Bushart threatened mass violence.

56.     No Perry County official contacted Mr. Bushart about the post.

57.     On information and belief, no Perry County official investigated Mr. Bushart's alleged threat except to confirm it accurately quoted President Trump's comments about an Iowa shooting.

58.     No law enforcement officer, including the Lexington Police Department officer who visited the Busharts, ever asked Mr. Bushart what he was thinking or what he intended when he posted the Meme.

59.     No law enforcement officer otherwise investigated Mr. Bushart's mental state when he posted the Meme.

***Mr. Bushart is arrested and incarcerated on a $2 million bond.***

60.     At Sheriff Weems's direction, Defendant Morrow obtained a warrant for the arrest of Mr. Bushart.

61.     Investigator Morrow provided the affidavit for Mr. Bushart's arrest warrant on September 21.

62.    Defendant Morrow's affidavit stated in full:

I, the affiant named below, after being sworn, state under oath that on or about 09/21/2025 in PERRY County, Tennessee, Larry Gene Bushart JR committed the offense(s) of violation(s) of T.C.A. § 39-16-517 Threatening Mass Violence at School. I further state under oath that the essential facts constituting the offense(s), the sources of my information and the reasons why this information is believable and reliable are as follows: at approximately 1900 hours, I, Inv[estigator] Jason Morrow, received a message from Sheriff Nick Weems regarding a Facebook post Larry Bushart made on the What's Happening in Perry County, TN Facebook page stating "This seems relevant today…" with an image of Donald Trump and the words "We have to get over it." "Donald Trump on the Perry High School mass shooting one day after[.]" This Facebook post was made on a message thread regarding the Charlie Kirk Vigil, which was held in Linden, TN on 09/20/2025. This was a means of communication, via picture, posted to a Perry County, TN Facebook page in which a reasonable person would conclude could lead to serious bodily injury, or death of multiple people.

63.    Tenn. Code Ann. § 39-16-517(b) (2024) provides, "A person who recklessly, by any means of communication, threatens to commit an act of mass violence on school property or at a school-related activity commits a Class E felony."

64.    Investigator Morrow omitted from his affidavit the information that the Meme referred to a shooting that occurred in Iowa nearly two years earlier in January 2024.

65.    The reviewing magistrate is a nonlawyer with no formal legal education.

66.    On information and belief, Defendants Morrow and Weems knew the magistrate to be a nonlawyer with no formal legal education.

67.    On its face, the arrest warrant did not support a finding of probable cause to arrest Mr. Bushart because it described solely protected political speech.

68.    Had the reviewing magistrate known that the Meme—posted on September 20, 2025—referenced an Iowa shooting from 2024, the absence of probable cause would have been even clearer to her.

69.     Investigator Morrow omitted this material information from his affidavit with the purpose of manufacturing probable cause where there was none.

70.     As Investigator Morrow's affidavit reveals, he and Sheriff Weems lacked probable cause because the facts and circumstances available for the arrest decision consisted only of political speech protected by the First Amendment.

71.     Investigator Morrow's affidavit described at most "the kind of political hyperbole" that the Supreme Court has clearly established does not meet the definition of a "threat." *Watts v. United States*, 394 U.S. 705, 708 (1969).

72.     Weems and Morrow knew that Mr. Bushart's posting of the Meme on Facebook was political speech protected by the First Amendment to the United States Constitution.

73.     At 11:14 PM on September 21, four officers from the Lexington Police Department arrived at the Busharts' front door.

74.     One officer informed Mr. Bushart that "Perry County ha[d] called back again," and "they'[d] ended up issuing a warrant" for him.

75.     The officers followed Mr. Bushart into his house as he put on his shoes and collected his belongings.

76.     The officers allowed him to meander about his home to retrieve items he might need in jail without restraining him.

77.     The officers eventually handcuffed Mr. Bushart on his front porch, in front of his wife, at 11:17 PM.

78.     Then they loaded Mr. Bushart into the back of a police vehicle and transported him to jail in Lexington.

79.     When they arrived, a Lexington officer informed Mr. Bushart that Defendant Perry County had charged him with "threatening mass violence at a school."

80.     "At a school?" Mr. Bushart asked.

81.     The officer, arrest warrant in his hand, said:"It's referring to a school. I have no idea. This is what they've called us for, and I ain't got a clue."

82.     Mr. Bushart said, "I played on Facebook. I threatened no one."

83.     The officer laughed and said, "I ain't got a clue. I just gotta do what I have to do."

84.     Mr. Bushart said, "I may have been an asshole, but—"

85.     "That's not illegal," the officer interjected.

86.     In the early hours of September 22, Mr. Bushart was transferred into the custody of the Perry County Sheriff's Office.

87.     A Perry County Sheriff's deputy drove Mr. Bushart to the Perry County jail.

88.     The deputy directed Mr. Bushart to sit in the front seat.

89.     The deputy did not handcuff or otherwise restrain Mr. Bushart while transporting him.

90.     Later that day, Mr. Bushart was formally charged with violating Tenn. Code Ann. § 39-16-517 ("Threat of mass violence on school property or at school-related activity").

91.     Mr. Bushart's bond was set at $2 million.

***Sheriff Weems launches a local news media tour about Mr. Bushart's arrest.***

92.     That same day, September 22, Sheriff Weems issued public comments to local media.

93.     In these comments, Weems maligned Mr. Bushart's character and defended the charge against him.

94.     In one statement, Sheriff Weems stated, "Creating mass hysteria in our community will not be tolerated."

95.     The next day, *The Tennessean* quoted Weems as alleging Mr. Bushart posted the picture "to indicate or make the audience think it was referencing our Perry High School."

96.     The name of the high school in Perry County, Tennessee, is Perry County High School.

97.     *The Tennessean* also quoted Sheriff Weems's assertion that "teachers, parents and students [had] conclude[d] he was talking about a hypothetical shooting at our school. Numerous reached out in concern."

98.     Later, in a Facebook comment, Sheriff Weems explained, "We were very much aware of the meme being from an Iowa shooting."

99.     In the same comment, Weems claimed the Meme "created mass hysteria to parents and teachers [for] those that weren't aware, that led the normal person to conclude that he was talking about our Perry County High School."

100.     Almost a month after these statements, a Tennessee resident sent public records requests to Perry County, Sheriff Weems, the Perry County Sheriff's Office, and the Perry County School Board.

101.     The public records requests sought information pertaining to Sheriff Weems' claims that the post had caused "mass hysteria to parents and teachers" and "considerable concern" within the community.

102.     In response, Director of Perry County Schools Eric Lomax stated, "I do not have any of this information you have requested. The Perry County Sheriff's Department handled this situation."

103. When pressed to confirm the Perry County School District had "no records responsive to this request whatsoever," Director Lomax replied, "yes the school system has no records on this case."

104. Tenn. Code Ann. § 39-16-517(d) requires "[a]ny person who has knowledge of a threat of mass violence on school property or at a school-related activity" to "report the threat immediately to … [t]he local law enforcement agency with jurisdiction over the school property or school-related activity; and [t]he school that is subject to the threat of mass violence." Failure to report a threat of mass violence on school property constitutes a Class B misdemeanor.

105. Perry County and Sheriff Weems have refused to respond to multiple public records requests seeking information pertaining to the alleged threat and the public reaction.

***After Defendant Weems finally tells local media the truth, Mr. Bushart is quickly freed.***

106. As Mr. Bushart languished in the Perry County jail, the public learned about his ordeal.

107. About a month after his arrest, Mr. Bushart's case began to receive significant attention in the media.

108. On or about October 28—day 37 of Mr. Bushart's captivity—Sheriff Weems sat for a television interview.

109. The interviewer asked, "But you also knew this was an existing meme that was already out there on the Internet …. So it's clear that he's not talking about Perry County High School." Sheriff Weems responded, "We knew."

110. When asked whether he truly thought Mr. Bushart had threatened Perry County High School, Sheriff Weems explained, "In my heart, I think Larry Bushart knew what he was doing once we made contact with him or when law enforcement made contact with him, and I

believe that he knew what he was doing and, in my heart, he violated the law set forth by our legislators."

111.    Sheriff Weems also told NewsChannel5 that Mr. Bushart "admitted to making the post and advised that he was not taking it down[.] So, therefore, he was showing the intent."

112.    In a statement to WKRN News 2, Sheriff Weems claimed the Lexington police sought to "de-escalate the situation before an arrest was made," but "Mr. Bushart declined to clarify his public messages and calm the situation that was causing multiple, reasonable citizens to be in fear of their children's safety at school."

113.    When News 2 asked Lexington's chief of police whether his department was involved in asking Mr. Bushart to de-escalate or clarify his remarks, the chief responded: "No."

114.    The next day, District Attorney Hans Schwendimann filed a motion to *nolle prosequi* the charge against Mr. Bushart.

115.    Mr. Bushart was released the same day.

## INJURIES TO PLAINTIFF

116.    Police officers removed Mr. Bushart from his residence in the dead of night because of his words.

117.    The police officers handcuffed Mr. Bushart in front of his wife and transported him in the back of a police vehicle to jail.

118.    Sheriff Weems maligned Mr. Bushart in the media as someone who would purposefully cause "mass hysteria," despite his knowledge that Mr. Bushart's post was not a threat.

119.    Mr. Bushart missed important family events while incarcerated, including the birth of his granddaughter and his wedding anniversary.

120.    Mr. Bushart is the primary breadwinner for his household.

15

121.    Mr. Bushart lost his post-retirement job performing medical transportation because of his unlawful incarceration.

122.    Mr. Bushart's unlawful incarceration placed in doubt his ability to continue providing for his household.

123.    Mr. Bushart's arrest forced his wife to retain the services of a criminal defense attorney as a result of the charge against him.

124.    Mr. Bushart's 37 days in jail were emotionally stressful and physically uncomfortable.

125.    Mr. Bushart's arrest was particularly humiliating given his former role as a law enforcement officer.

126.    Since his arrest and incarceration, Mr. Bushart has limited his participation in online political conversation because he is afraid that something like his arrest and incarceration might happen to him again.

## CAUSES OF ACTION

### Claim #1: First Amendment Retaliation
### (42 U.S.C. § 1983)
### (Against All Defendants)

127.    Mr. Bushart realleges and incorporates paragraphs 1–126 as if repeated here.

128.    The Meme Mr. Bushart posted is speech and expression squarely protected by the First and Fourteenth Amendments to the United States Constitution.

129.    An unprotected "true threat" is a statement communicating "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

130.    The Meme does not convey a serious expression of an intent to commit an act of unlawful violence.

131.    At all times relevant to this action, it was clearly established that the First Amendment protects the right to engage in political speech that others might find controversial. *See, e.g.*, *Watts*, 394 U.S. at 708.

132.    At all times relevant to this action, it was clearly established law that "political hyperbole" does not amount to a proscribable, unprotected "threat" under the First Amendment. *Id.*

133.    Mr. Bushart's post was at most rhetorical political hyperbole about a matter of public concern and debate. *Id.*

134.    At all times relevant to this action, it was clearly established law that the First Amendment protects the right to speak on social media. *Packingham v. North Carolina*, 582 U.S. 98, 108 (2017).

135.    When Mr. Bushart posted the Meme to Facebook, he had no reason to believe that any person might interpret his post as a threat to anyone, anywhere.

136.    When Mr. Bushart posted the Meme, he also did not "consciously disregard[] a substantial risk that his communications would be viewed as threatening violence." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

137.    At all times relevant to this action, it was clearly established law that a government official acting on an alleged true threat "must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.*

138.    Sheriff Weems disagreed with the viewpoint Mr. Bushart expressed in posting the Meme to Facebook.

139.    Mr. Bushart's protected expression was a motivating factor in Defendants' wrongful, retaliatory, and punitive conduct, which included (but was not limited to) collectively

and unconstitutionally subjecting Mr. Bushart to wrongful arrest, wrongful prosecution, and 37 days of wrongful incarceration.

140.    Because he disagreed with the viewpoint expressed in the Meme, Sheriff Weems ordered Defendant Morrow to arrest Mr. Bushart for his protected expression.

141.    At Sheriff Weems's request, the Lexington Police Department handcuffed, arrested, and transported Mr. Bushart to jail in the dead of night.

142.    The arrest warrant the Lexington Police Department executed against Mr. Bushart was supported solely by Investigator Morrow's affidavit.

143.    In arresting Mr. Bushart on charges of threatening mass violence at a school, Defendants knowingly caused Mr. Bushart to be subject to an unreasonably large and punitive bond with the purpose of ensuring that Mr. Bushart would be fully deprived of his liberty for as long as possible.

144.    As part of this plan, and in concert with Defendant Weems, Defendant Morrow willfully and maliciously omitted from his affidavit material information—that the Meme referred to a shooting that occurred the prior year in a different state—to secure the warrant authorizing Mr. Bushart's arrest.

145.    Investigator Morrow's omission was part of his collective plan with Defendant Weems to mislead the magistrate and to manufacture probable cause to arrest and incarcerate Mr. Bushart where no such cause existed.

146.    Both before and after Mr. Bushart's release, Sheriff Weems made public statements denigrating Mr. Bushart and defending his wrongful arrest and incarceration.

147. Weems and Morrow lacked probable cause and arguable probable cause for Mr. Bushart's arrest for making a threat of mass violence on school property under Tenn. Code Ann. § 39-16-517.

148. As Investigator Morrow's affidavit reveals, he and Sheriff Weems lacked probable cause, because the facts and circumstances available for the arrest decision were merely political speech protected by the First Amendment.

149. Investigator Morrow's affidavit described "the kind of political hyperbole" that the Supreme Court has clearly established does not amount to a proscribable, unprotected "threat" of violence under the First Amendment. *Watts*, 394 U.S. at 708.

150. Weems and Morrow knew that Mr. Bushart's posting of the Meme on Facebook was political speech protected by the First Amendment to the United States Constitution.

151. At all times relevant to this action, Defendants Weems and Morrow had actual knowledge that the Meme did not refer to a hypothetical future shooting at Perry County High School in Tennessee, but instead referred to a shooting that occurred in Perry, Iowa, in January 2024.

152. These adverse actions committed by Defendants against Mr. Bushart would deter a person of ordinary firmness from continuing to engage in constitutionally protected expression and would likely deter others who are similarly situated from engaging in similar protected expression.

153. At all times relevant to this action, it was clearly established law that the First Amendment prohibits any government official from retaliating against a speaker based on expression protected by the First Amendment.

154. A reasonable police officer or official with the same information available to Weems and Morrow would have understood Mr. Bushart's posting the Meme as political speech the First Amendment protects.

155. No reasonable officer would have proceeded to contrive Mr. Bushart's arrest for core political speech, as Defendants did.

156. At all times relevant to this action, no reasonable police officer or official with the same information available to Weems and Morrow would have interpreted Mr. Bushart's posting the Meme to Facebook as a threat of violence. *See Watts*, 394 U.S. at 708.

157. Nor would any reasonable officer or official in Defendants' shoes believe, given the specific facts and circumstances, a reasonable member of the public would have interpreted Mr. Bushart's post as a threat of violence to Perry County High School.

158. Defendants' conduct in retaliation for Mr. Bushart's exercise of protected speech entitles Mr. Bushart to compensatory damages.

159. Defendants' conduct in retaliation for Mr. Bushart's exercise of protected speech was malicious, oppressive, and in reckless disregard of Mr. Bushart's clearly established First Amendment rights, entitling Mr. Bushart to punitive damages against Weems and Morrow.

160. Defendant Perry County is liable under 42 U.S.C. § 1983 for decisions made by its final policymaker. *See Pembaur*, 475 U.S. at 483–84; *Wright*, 313 F. Supp. 3d at 890–91. Sheriff Weems is the final policymaker with respect to all law enforcement in Perry County. *See supra* ¶¶ 18–19, 22.

161. Because Sheriff Weems directed, was aware of, and sanctioned Mr. Bushart's arrest without probable cause and in retaliation for his protected speech, Perry County is liable for Mr.

Bushart's unconstitutional and retaliatory arrest, entitling him to compensatory damages against Perry County.

### Claim #2: Application of TENN. CODE ANN. § 39-16-517 in Violation of First Amendment
### (42 U.S.C. § 1983)
### (Against All Defendants)

162.    Mr. Bushart re-alleges and incorporates paragraphs 1–126, 128–151, and 154–157 as if repeated here.

163.    No reasonable officer could have concluded, based on the specific facts and circumstances, that Mr. Bushart's post satisfied the elements of Tenn. Code Ann. § 39-16-517.

164.    Nevertheless, Weems and Morrow applied the statute to Mr. Bushart without arguable probable cause.

165.    At Sheriff Weems's direction, Investigator Morrow secured a warrant for Mr. Bushart's arrest based entirely on Mr. Bushart's protected speech.

166.    Weems and Morrow wrongly deployed Tenn. Code Ann. § 39-16-517 to falsely obtain an arrest warrant without probable cause.

167.    At all times relevant to this action, no reasonable police officer or official with the same information available to Weems and Morrow would have interpreted Mr. Bushart's posting the Meme to Facebook as a threat of violence. *See Watts*, 394 U.S. at 708.

168.    At all times relevant to this action, no reasonable officer or official would believe, given the specific facts and circumstances, a reasonable member of the public would have interpreted Mr. Bushart's post as a threat of violence. *Id.*

169.    At all times relevant to this action, no reasonable officer or official would believe, given the specific facts and circumstances, that at the time he posted the Meme, Mr. Bushart was subjectively aware of any risk a member of the public would have interpreted the post as a threat of violence.

170.    Defendants' pretextual and unconstitutional application of Tenn. Code Ann. § 39-16-517 to Mr. Bushart's protected expression entitles Mr. Bushart to compensatory damages.

171.    Because Defendants' application of Tenn. Code Ann. § 39-16-517 to Mr. Bushart's protected expression was malicious, oppressive, and in reckless disregard of Mr. Bushart's clearly established First Amendment rights, Mr. Bushart is entitled to punitive damages against Weems and Morrow.

172.    Defendant Perry County is liable under 42 U.S.C. § 1983 for decisions made by its final policymaker. *See Pembaur*, 475 U.S. at 483–84; *Wright*, 313 F. Supp. 3d at 890–91. Sheriff Weems is the final policymaker with respect to all law enforcement in Perry County. *See supra* ¶¶ 18–19, 22.

173.    Because Sheriff Weems directed, was aware of, and sanctioned the application of Tenn. Code Ann. § 39-16-517 to Mr. Bushart's protected expression, Perry County is liable for the unconstitutional application of the statute to Mr. Bushart's protected political speech, entitling him to compensatory damages against Perry County.

**Claim #3: Fourth Amendment Violation — Unconstitutional Seizure and False Arrest**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

174.    Mr. Bushart realleges and incorporates paragraphs 1–126, 128–151, and 154–157 as if repeated here.

175.    At all times relevant to this action, the "constitutional right to 'freedom from arrest in the absence of probable cause' [wa]s clearly established." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)).

176.    At all times relevant to this action, it was clearly established law that "protected speech cannot serve as the basis for" probable cause. *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997).

177.    Without probable cause for arrest, Weems and Morrow made, influenced, and/or participated in the decision to arrest Mr. Bushart for posting the Meme.

178.    Lacking even arguable probable cause, Sheriff Weems ordered Investigator Morrow to investigate Mr. Bushart for his protected expression.

179.    On Sheriff Weems's orders and/or with Defendant Weems's knowledge, Investigator Morrow willfully and maliciously omitted from his affidavit material information—that the Meme referred to a shooting that occurred the prior year in a different state—to secure the warrant authorizing Mr. Bushart's arrest.

180.    Investigator Morrow knew, or should have known, that the Meme did not qualify as a true threat under clearly established law. *See Watts*, 394 U.S. at 708.

181.    Investigator Morrow knew, or should have known, that the Meme was political speech protected by the First Amendment. *Id.*

182.    In his affidavit, Investigator Morrow stated that Mr. Bushart violated Tenn. Code Ann. § 39-16-517 because the Meme "was a means of communication, via picture, posted to a Perry County, TN Facebook page in which a reasonable person would conclude could lead to serious bodily injury, or death of multiple people."

183.    Weems and Morrow acted in concert to effectuate Mr. Bushart's false and wrongful arrest and incarceration.

184.    Defendant Weems knew, or should have known, that Defendant Morrow made material omissions in his affidavit supporting the arrest warrant.

185.    Weems and Morrow knew, or should have known, that the facts and circumstances described in Investigator Morrow's affidavit described no more than political speech protected by the First Amendment.

186.    Weems and Morrow knew, or should have known, that neither Mr. Bushart's posting the Meme to Facebook nor Investigator Morrow's affidavit describing the post supported the charge of "Threatening Mass Violence at School."

187.    Weems and Morrow willfully caused Mr. Bushart's arrest and prolonged detention with malice and/or a reckless and callous disregard for, and deliberate indifference to, his constitutional rights.

188.    At all times relevant to this action, it was clearly established that an official or another person acting under the color of state law cannot deprive a person of due process and seize and detain his person without probable cause.

189.    At all times relevant to this action, it was clearly established that an official or another acting under the color of state law cannot deprive a person of due process and seize his person in response to that person engaging in constitutionally protected activity, like posting a nonthreatening meme to social media.

190.    At all times relevant to this action, no reasonable police officer or official with the same information available to Weems and Morrow would have interpreted Mr. Bushart's posting the Meme to Facebook as a threat of violence.

191.    No reasonable officer or official in Defendants' shoes would suspect, given the specific facts and circumstances, a reasonable member of the public would have interpreted Mr. Bushart's post as a threat of violence.

192.    Given the specific facts and circumstances, no reasonable official would have applied for an arrest warrant, let alone omitted material facts underscoring the lack of probable cause.

193.    Defendants' false arrest of Mr. Bushart entitles him to compensatory damages.

194.    Because Defendants' false arrest of Mr. Bushart was malicious, oppressive, and in reckless disregard of Mr. Bushart's clearly established Fourth Amendment rights, Mr. Bushart is entitled to punitive damages against Weems and Morrow.

195.    Defendant Perry County is liable under 42 U.S.C. § 1983 for decisions made by its final policymaker. *See Pembaur*, 475 U.S. at 483–84; *Wright*, 313 F. Supp. 3d at 890–91. Sheriff Weems is the final policymaker with respect to all law enforcement in Perry County. *See supra* ¶¶ 18–19, 22.

196.    Because Sheriff Weems directed, was aware of, and sanctioned Mr. Bushart's false arrest without probable cause and in retaliation for his protected speech, Perry County is liable for the false arrest and unconstitutional seizure of Mr. Bushart, entitling him to compensatory damages against Perry County.

### Claim #4: Fourth Amendment Violation — Malicious Prosecution
### (42 U.S.C. § 1983)
### (Against All Defendants)

197.    Mr. Bushart realleges and incorporates paragraphs 1–126, 128–151, 154–157, and 176–192 as if repeated here.

198.    Acting together, Weems and Morrow wrongfully instituted legal process against Mr. Bushart and subjected him to wrongful harassment by the police, wrongful arrest, wrongful prosecution, and wrongful incarceration lasting 37 days in violation of the Fourth and Fourteenth Amendments to the United States Constitution. With malicious intent, the Defendants acted individually and collectively in pursuit of a common plan under color of law to deprive Mr. Bushart of his constitutional rights.

199.    In pursuit of this plan and with the intent to wrongfully manufacture probable cause, Defendant Morrow intentionally omitted from his affidavit material information—that the Meme

referred to a shooting that occurred the prior year in a different state—to secure the warrant authorizing Mr. Bushart's wrongful arrest.

200.    On information and belief, Investigator Morrow intentionally omitted this material information from his affidavit on the orders of, and/or with the knowledge of, Sheriff Weems.

201.    Weems and Morrow knew that there was no probable cause to investigate Mr. Bushart solely for posting the Meme on Facebook.

202.    Weems and Morrow knew that there was no probable cause to arrest Mr. Bushart solely for posting the Meme on Facebook.

203.    Weems and Morrow knew that there was no probable cause to incarcerate Mr. Bushart solely for posting the Meme on Facebook.

204.    A reasonable officer in each Defendant's position would have known that, based on the specific facts and circumstances surrounding Mr. Bushart's post, there was no probable cause to arrest, investigate, or incarcerate Mr. Bushart solely for posting the Meme on Facebook.

205.    Despite this knowledge, Weems and Morrow collectively, intentionally, and unconstitutionally collaborated on a plan to deprive Mr. Bushart of his constitutional rights.

206.    This plan included, *inter alia*, providing incomplete information to the magistrate and prosecutor with the intent of conjuring probable cause to arrest and prosecute Mr. Bushart where no such cause existed.

207.    This plan also included seeking and securing an unreasonably large and punitive bond with the purpose of ensuring Mr. Bushart would be fully deprived of his liberty for as long as possible.

208.    Mr. Bushart's criminal proceeding was resolved in his favor when, on October 29, 2025, the General Sessions Court of Perry County allowed the State of Tennessee to enter a *nolle prosequi*.

209.    The State's decision to *nolle prosequi* was not based on any settlement or plea.

210.    The State's decision to *nolle prosequi* was made because Mr. Bushart's posting of the Meme was not a crime, and because Defendants lacked probable cause to believe he committed a crime.

211.    As a consequence of Defendants' wrongful institution of legal process against Mr. Bushart, Mr. Bushart suffered a deprivation of liberty apart from his initial seizure, including continuous detention in jail for 37 days without probable cause.

212.    Defendants' malicious prosecution of Mr. Bushart entitles Mr. Bushart to compensatory damages.

213.    Because Defendants' prosecution of Mr. Bushart was malicious, oppressive, and in reckless disregard of Mr. Bushart's clearly established Fourth Amendment rights, Mr. Bushart is entitled to punitive damages against Weems and Morrow.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Larry Bushart respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.    An award of monetary damages against Defendant Perry County and Defendants Weems and Morrow in their individual capacities in an amount to be determined at trial;

B.    An award of punitive damages against Defendants Weems and Morrow in their individual capacities;

C.      An award of reasonable attorneys' fees, statutory fees, and costs under 42 U.S.C.

§ 1988 and other applicable law; and

D.      All other further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff Larry Bushart demands a trial by jury

on all issues so triable.

DATED:        December 17, 2025

Respectfully submitted,

*/s/ Katherine Phillips*
Katherine Phillips
(TN BPR No. 036757)
PHILLIPS & PHILLIPS, PLLC
46 S. Main Street, Suite 2
Lexington, TN 38351
Tel: (731) 249-5246
katie@phillipsandphillips.law

David Rubin*
(CA Bar No. 329852; D.C. Bar No.
  90021100)
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
david.rubin@fire.org

Adam Steinbaugh*
(CA Bar No. 304829; PA Bar No. 326475)
Cary Davis*
(PA Bar No. 338042)
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473

adam@fire.org
cary.davis@fire.org

*Motions for Leave to Appear *Pro Hac Vice*
forthcoming


*Counsel for Plaintiff Larry Gene Bushart Jr.*